Joyce JEFFERSON o/b/o Robbie L. Nelson SSN: 447–78–3460 Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration,[1] Defendant.

No. 01–CV–485–X.

United States District Court, N.D. Oklahoma.

May 29, 2002.

---

**1.** Pursuant to Fed.R.Civ.P. 25(d)(1), Jo Anne B. Barnhart, Commissioner of Social Security, is substituted as the defendant in this action.

Mark E. Buchner, Tulsa, OK, for Plaintiff.

Wyn Dee Baker, Cathryn Dawn McClanahan, U.S. Atty., Tulsa, OK, for Defendant.

### ORDER [2]

JOYNER, United States Magistrate Judge.

Now before the Court is Plaintiff's appeal of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

Plaintiff, Robbie Nelson, was a minor at the time of the hearing below and her mother, Joyce Jefferson, appeared at the hearing below and in this case on her behalf. Plaintiff alleges that she is disabled due to metal retardation. The Ad-

ministrative Law Judge ("ALJ"), Leslie S. Hauger, Jr., denied benefits at step three of the sequential evaluation process used by the Commissioner to evaluate disability claims brought by children. The ALJ found that Plaintiff did not have "marked and severe functional limitations" as required by 42 U.S.C. § 1382c(a)(3)(C).

On appeal, Plaintiff argues that (1) the ALJ's decision is not supported by substantial evidence because he ignored or failed to properly assess all of the record evidence, (2) the ALJ failed to adequately develop the record regarding Plaintiff's mental condition, (3) the ALJ failed to make a credibility determination with regard to Plaintiff's mother, and (4) the ALJ failed to fully inform Plaintiff's mother of her right to counsel at the hearing below. The Court has meticulously reviewed the entire record, and finds that the Appeals Council's decision is not supported by substantial evidence. Consequently, the Commissioner's decision is **REVERSED** and this case is **REMANDED**.

### I. STANDARD OF REVIEW

The standard of review to be applied by this Court to the Commissioner's disability determinations is set forth in 42 U.S.C. § 405(g). According to § 405(g), "the finding of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support the ultimate conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Williams,* 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales,* 402 U.S. at 401. Evidence is not substantial if it is over-

---

**2.** This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties'

Consent to Proceed Before United States Magistrate Judge.

whelmed by other evidence in the record. *Williams,* 844 F.2d at 750.

To determine whether the Commissioner's decision is supported by substantial evidence, the Court will not undertake a *de novo* review of the evidence. *Sisco v. U.S. Dept. of Health and Human Services,* 10 F.3d 739, 741 (10th Cir.1993). The Court will not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams,* 844 F.2d at 750; *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985).

In addition to determining whether the Commissioner's decision is supported by substantial evidence, it is also this Court's duty to determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision will be reversed when he/she uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass,* 43 F.3d at 1395.

## II. DISCUSSION

### A. STANDARD FOR EVALUATING DISABILITY IN CHILDREN

On August 22, 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining childhood disabilities under the Social Security Act. *See* Pub.L. No. 104–193, 110 Stat. 2105, 2188 (1996). The new statute provides that a child is considered disabled if the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which is expected to last for a period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C). This new legislation discards the "comparable severity" test previously used in favor of a showing of "marked and severe functional limitations." *See Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (discussing the old standard). This new test imposes a more stringent standard for evaluating childhood disability claims than the earlier test.

Through regulations, the Commissioner has adopted a three-step sequential analysis to determine whether a child is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is to determine whether the child is engaged in any substantial gainful activity. The second step is to decide whether the child has a medically severe impairment or combination of impairments. The third step is to determine whether the child's impairment meets or medically equals any of the Listing of Impairments contained in Appendix 1 of 20 C.F.R., pt. 404, subpt. P. If the impairment meets or medically equals one of the Listing of Impairments, the child is considered disabled. *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237–38 (10th Cir.2001).

Ms. Jefferson argues that her daughter's mental condition meets Listing 112.05. Listing 112.05, dealing with mental retardation, is met when a claimant's mental condition is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning," and when the requirements in either part A, B, C, D, E, or F of the Listing are satisfied.

**Part A** of Listing 112.05 is satisfied for children aged 3 to 18 when the child's condition results in at least two of the following:

1. a marked impairment in age-appropriate cognitive/communicative function;

2. a marked impairment in age-appropriate social functioning;

3. a marked impairment in age-appropriate personal functioning; or

4. a marked difficulty in maintaining concentration, persistence, or pace.

**Part B** of Listing 112.05 is satisfied when the child's mental condition is

evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and [an] inability to follow directions such that the use of standardized measures of intellectual functioning is precluded.

**Part C** of Listing 112.05 is satisfied when the child has a

valid verbal, performance, or full scale IQ of 59 or less. ,

**Part D** of Listing 112.05 is satisfied for children aged 3 to 18 when the child has both:

1. a valid verbal, performance, or full scale IQ of 60 through 70; and

2. a physical or other mental impairment imposing an additional and significant limitation of function;

**Part E** of Listing 112.05 is satisfied for children aged 3 to 18 when the child has both:

1. a valid verbal, performance, or full scale IQ of 60 through 70; and

2. one of the following: a marked impairment in age-appropriate social functioning; a marked impairment in age-appropriate personal functioning; or a marked difficulty in maintaining concentration, persistence, or pace.

**Part F** of Listing 112.05 is satisfied for children aged 3 to 18 when the child has both:

1. a marked impairment in age-appropriate cognitive/communicative function; and

2. a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 112.05.

**1. The ALJ's Determination that Plaintiff Does Not Meet Listing 112.05 is Supported by Substantial Evidence.**

There is no evidence in the record that Parts B, C, D or F of Listing 112.05 are met in this case. Part B of Listing 112.05 requires a showing that the claimant is so unable to follow directions that the use of standardized testing is precluded. The record in this case reflects that Plaintiff was able to, and did, follow directions and take several standardized tests. Part B of Listing 112.05 is, therefore, not applicable on this record.

Part C of Listing 112.05 requires a verbal, performance, or full scale IQ of 59 or less. The lowest IQ score Plaintiff received was a verbal IQ score of 62. Part C of Listing 112.05 is, therefore, not applicable on this record.

Other than the mental impairment resulting in her low IQ scores, Plaintiff has not established that she is suffering from any "other" physical or mental impairment which imposes "additional" and "significant" limitations on her ability to function. Plaintiff has not, therefore, demonstrated that she meets either Part D or Part F of Listing 112.05.

Part A of Listing 112.05 is met, regardless of IQ, if Plaintiff can show that she suffers from a marked impairment in two of the following areas: cognitive/communicative functions; social functions; personal functions; and concentration, persistence or pace. Part E of Listing 112.05 is met if Plaintiff has an IQ score of 60 to 70, and a marked impairment in one of the following areas: social functions; personal functions; and concentration, persistence or pace. In other words, Part E is like Part A, except that the low IQ score required by Part E is itself sufficient to show a marked impairment in cognitive/communicative functioning.

The ALJ determined that Plaintiff met the first prong of Parts A and E of Listing 112.05. That is, the ALJ accepted that Plaintiff had a valid IQ score in the 60 to 70 range, and that Plaintiff had a marked limitation of her cognitive/communicative functions. *R.* at 16 and 18. While there was some conflicting evidence from a consultative examiner showing that Plaintiff's IQ scores were actually in the 70's, the ALJ accepted the evidence in the record which showed IQ scores for Plaintiff in the 60's. The records which showed scores in the 60's were test result from Tulsa Public Schools. *R.* at 109–110A and 142–46. It is these test results which Plaintiff so vociferously argues the ALJ ignored. The ALJ did not ignore them. In fact, he necessarily accepted them to find that Plaintiff met the first prong of Listing 112.05E. Plaintiff did, therefore, establish that she meets the first prong of Parts A and E of Listing 112.05.

■ The Court agrees with the Commissioner that the ALJ's determination that Plaintiff did not meet the second prong of either Parts A or E of Listing 112.05 is supported by substantial evidence. The ALJ's determination that Plaintiff does not have a marked limitation in social functioning; personal functioning; or in her concentration, persistence or pace is supported by substantial evidence. The Commissioner does a good job at pages 5–7 of her brief outlining the evidence supporting the ALJ's decision, and the Court cannot improve upon that analysis. Doc. No. 14.

Much of Plaintiff's argument is premised on the fact that certain IQ scores show that Plaintiff is performing somewhere between a 7 year old and an 11 year old, depending on the skill being assessed. *R.* at 109–110A. The Commissioner's regulations indicate, however, that test scores alone will not be conclusive. 20 C.F.R. § 416.924a(a)(ii). Rather, the ALJ will consider all evidence in a record to make determinations about social functioning and concentration. *Id.* That is what the ALJ did in this case. The Court is not convinced that the ALJ ignored the test results discussed above. Rather, he evaluated them along with other evidence in the record, including reports from Plaintiff's teachers and counselors, and the consultative examiner, and determined that Plaintiff was not suffering from a marked limitation in social functioning or concentration, persistence or pace.

2. The Appeals Council's Determination That Plaintiff Does Not Functionally Equal Listing 112.05 Is Not Supported By Substantial Evidence.

If a child's impairment does not meet or medically equal a Listing, the Commissioner's regulations require a consideration of whether the child's impairment is severe enough that it is functionally equivalent to the severity required by the Listings. Functional equivalency means that the claimant's impairment is of listing-level severity. 20 C.F.R. § 416.926a. As reflected by his opinion, the ALJ considered whether Plaintiff's mental impairment, while not meeting Listing 112.05, was such a severity as to be functionally equal to the Listings. *R.* at 17.

The ALJ entered his decision in July 1999. The Appeals Council entered its decision in May 2001. During the period between the ALJ's decision and the Appeals Council's decision, the Commissioner amended the functional equivalency regulations in § 416.926a. These amendments became effective January 2, 2001. *Briggs,* 248 F.3d at 1238 n. 2. As the Tenth Circuit noted, these "amendments mark a major change in the evaluation process employed by ALJ's in child disability cases and provide a single method of evaluation based only on domains of functioning." *Id.*

Under the new regulations, an impairment is functionally equivalent to the Listings (i.e., is of listing-level severity) when the impairment results in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). The domains of functioning are: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being. *Id.* at § 416.926a(b)(1).[3] A "marked" limitation is one that "interferes seriously" with a child's ability to "independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(I). Someone with a marked limitation is performing at a level the Commissioner would expect someone to perform when their standardized test scores are at least two, but less than three, standard deviations below the mean. *Id.* An "extreme" limitation is one that interferes "very seriously" with a child's ability to "independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(3)(I). Someone with an extreme limitation is performing at a level the Commissioner would expect someone to perform when their standardized test scores are three or more standard deviations below the mean. *Id.* *See also Briggs,* 248 F.3d at 1237–38 & n. 1.

When the new regulations relating to functional equivalency were passed, the Commissioner specifically indicated that they would be applied to "claims pending at any stage of [SSA's] administrative review process ...." 65 Fed.Reg. 54747, 54751 (Sep. 11, 2000). In its decision, the Appeals Council indicated as follows:

> The Appeals Council considered the final regulations, effective January 2, 2001,

implementing the childhood disability provisions of Public Law 104–193. The new regulations do not provide a basis to change the Administrative Law Judge's decision.

*R.* at 6. The Appeals Council indicated, therefore, that it had applied the new functional equivalence regulations at 20 C.F.R. § 416.926a.

■ The functional equivalence analysis required by the pre–2000 regulations and the post–2000 regulations are significantly different. Other than the one sentence explanation discussed above, the Appeals Council gives no explanation or reasons as to why Plaintiff's impairment was not of listing-level severity (i.e., functionally equivalent) under the new regulations in § 416.926a, and the ALJ necessarily did not perform the analysis now required by § 416.926a. The Court is, therefore, left with nothing to review. The Court would have to review the record for itself to determine whether Plaintiff's impairment is functionally equal to a Listing under § 416.926a. This the Court is not permitted to do under 42 U.S.C. § 405(g). The Appeals Council's decision is not supported by substantial evidence. *See, e.g., Winfrey v. Chater,* 92 F.3d 1017, 1025 (10th Cir. 1996). This case must, therefore, be reversed and remanded so that the Commissioner can conduct the required analysis under § 416.926a.

**B. THERE IS NO EVIDENCE THAT THE ALJ WAS BIASED AGAINST PLAINTIFF DUE TO HER RACE.**

■ Plaintiff refers to the following exchange with Plaintiff's mother at the hearing as establishing that the ALJ was engaging in racial stereo-typing:

ALJ: Ms. Jefferson, anything else?

---

3. These domains are described in greater detail, with examples, in the Commissioner's regulations. *See* 20 C.F.R. § 416.926a(g)-(*l*).

WIT: Well, what I'm confused at, is I'm having problems with, like, through the school year I, you know, I thought she was doing good in school, and (INAUDIBLE) and I have to help out. . . . And I been getting that she had good grades. You see, I just signed her about a year ago, that, either one of them, well, she can't read. And (INAUDIBLE) at the house I have to—like when her baby get medication, you see, I have to do all the paperwork. Whatever paperwork they need to fill out I have to fill it out.

ALJ: Uh-huh.

WIT: If they go into the kitchen and want to cook a cake, I have to read the directions to them.

ALJ: Okay. There's a lot of people that can't read that are still functioning.

WIT: Well, I know. She went out and got a job once and they won't keep her on there because she couldn't—because of her reading ability.

ALJ: Because she didn't read?

WIT: Uh-huh.

ALJ: Well, it doesn't tell you, you could be a janitor without having to read. A lot of things that people can do. There's a lot of people running around that can't read that do work.

R. at 160–61. The Court finds nothing in this exchange which exhibits a racial bias on the part of the ALJ. The ALJ was merely making a factual statement—that there are certain jobs which an illiterate person can perform.

### C. PLAINTIFF, THROUGH HER MOTHER, WAS ADEQUATELY INFORMED OF HER RIGHT TO COUNSEL AT THE HEARING BELOW.

▮ Prior to the hearing below, the Commissioner informed Plaintiff's mother of the following: her right to have counsel at the hearing; that counsel familiar with Social Security laws and regulations would be helpful; that she might qualify for free legal services; that there were lawyers who would not charge a fee unless she won her case, and that the fee would be limited to a percentage of past due benefits; and that any fee charged by a lawyer would have to be approved by the Commissioner. The Commissioner also provided Plaintiff's mother with a list of attorneys in her area who could help her, and indicated that if she needed an extension to obtain an attorney he would grant it. The ALJ also told Plaintiff's mother than if she appeared at the hearing without an attorney, he would ask her to waive her right to representation at the hearing. Several weeks prior to the hearing, Plaintiff's mother was also given the name and telephone number of the ALJ's legal assistant, whom she could call if she had any questions about obtaining an attorney. R. at 30 and 107. Based on this evidence, the Court finds that the Commissioner adequately informed Plaintiff, through her mother, of her right to counsel. *See Scott v. Callahan*, 977 F.Supp. 856, 866–67 (N.D.Ill.1997).

### CONCLUSION

The Commissioner's decision denying Plaintiff's application for benefits under Title XVI of the Social Security Act is **REVERSED.** This case is hereby **REMANDED** so that the Commissioner may conduct a functional equivalence analysis under the current version of 20 C.F.R. § 416.926a.