Shadae BOOKER–SHELTON, a minor by her mother and next friend, Alice BOOKER–MORGAN Plaintiff,

v.

Jo Anne BARNHART, Commissioner of Social Security, Defendant.

No. 02 C 6811.

United States District Court,
N.D. Illinois,
Eastern Division.

June 10, 2003.

M. Jacqueline Walter, Kielian & Walther, Chicago, IL, for Plaintiff.

Anne Lipnitz, Special Asst. U.S. Attorney, Chicago, IL, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

The mother of plaintiff Shadae Booker Shelton brings this action on her behalf pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her Supplemental Security Income ("SSI") under the Social Security Act.

### I. BACKGROUND

Plaintiff suffers from a hereditary disorder called angioedema, which results in a diffuse and painful swelling of the skin and mucous membranes. The Merck Manual, at 1554–56 (17th ed.1999). It may involve the upper airways and can then be mistaken for asthma, producing similar symptoms. *Id.* at 1555. Attacks can be precipitated by trauma or viral infection, and may be aggravated by stress. *Id.* at 1556.

Plaintiff, born on July 7, 1986, began receiving SSI in 1995, when she was nine years old. In July of 1997, her benefits ceased as a result of the change in the law. (Administrative Record (R.) at 28–31). Plaintiff's mother filed a request for reconsideration, which was denied (R. 47–48), and she then requested an administrative hearing. On October 1, 1999, an administrative law judge ("ALJ") conducted a hearing at which plaintiff and her mother appeared, represented by counsel, and testified. (R. 280–333). In addition, Dr. Howard Lee appeared and testified as a medical expert ("ME"). On January 12, 2000, after considering all the evidence of record, the ALJ found that plaintiff was not disabled because she did not have an impairment that met or equaled the requirements of a listing in the Listings of Impairments. (R. 19–25). This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review of the decision on July 26, 2002. (R. 4–5).

## II. APPLICABLE LAW

Plaintiff's case highlights the recent evolution of the law applicable child's disability benefits, and the resultant issues as to the applicability of that law which have concerned several courts in this district; *Lawrence v. Barnhart,* No. 02 C 50127, 2003 WL 1964461 (N.D.Ill. Apr. 25, 2003); *Abrams v. Barnhart,* No. 01 C 8096, 2002 WL 1204954 (N.D.Ill. June 5, 2002); *Mayfield v. Barnhart,* No. 01–9418, 2003 WL 223310 (N.D.Ill. Jan. 29, 2003); and others; *Kittles Ex. Rel. Lawton v. Barnhart,* 245 F.Supp.2d 479 (E.D.N.Y.2003); *Jefferson v. Barnhart,* 209 F.Supp.2d 1200 (N.D.Okla.2002). From 1974 until 1990, SSI was available only to those children whose condition met or medically equaled one of the impairments set out in the "Listing of Impairments" published in the regulations. In 1990, however, the Supreme Court issued its decision in *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), finding that the SSA's "listings-only" approach did "not carry out the statutory requirement that SSI benefits shall be provided to children with 'any ... impairment of comparable severity' to an impairment that would make an adult 'unable to engage in any substantial gainful activity.'" 493 U.S. at 541, 110 S.Ct. at 897. Instead, the Court indicated that the statute required the Social Security Administration ("SSA") to provide claimants with an individualized, functional analysis. 493 U.S. at 539, 110 S.Ct. at 896. In response to the *Zebley* decision, the SSA promulgated new regulations regarding the comparable severity standard, which went into effect in 1993. Childhood disability determinations commenced, as before, with an examination of whether the child's impairments met or medically equaled a listing. If they did not, an "individualized functional assessment" ("IFA") was conducted to determine whether a child's impairments resulted in limitations in—depending on age—five or six developmental or functional "domains" that rendered the child disabled. In an individualized functional assessment of a child between the ages of three and sixteen, the applicable "domains" were: (1) cognition; (2) communication; (3) motor abilities; (4) social abilities; (5) personal/behavioral patterns; and (6) concentration, persistence, and pace in task completion. 20 C.F.R. §§ 416.924d(c), (g)-(j); 416.924e(c)(2), (d) (1993). The severity of limitations in each of the domains was categorized as "mild," "moderate," or "marked." A child with a "marked" limitation in one domain and a "moderate" limitation in another domain, or "moderate" limitations in three domains, was considered disabled. There was a certain degree of flexibility to allow consideration of

"mild" limitations as well; the "one marked plus one moderate" or "three moderate" standards were "only guidelines to illustrate severity." 20 C.F.R. § 416.924e(a) (1993). Under these criteria, the plaintiff in this case was found to be disabled, and began receiving benefits in August of 1995.

The change in the law resulting in the termination of plaintiff's benefits came in August of 1996, when Congress enacted the 1996 Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA). The PRWORA set forth a new standard for determining whether a child is disabled, abandoning the comparison of a child's impairment to one which would disable an adult. Under the PRWORA:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i)(1997); *see Williams v. Apfel,* 179 F.3d 1066, 1068 n. 3 (7th Cir.1999); *Hickman v. Apfel,* 187 F.3d 683, 685 n. 2 (7th Cir.1999). PRWORA also mandated that within one year of its date of enactment the commissioner "redetermine the eligibility of individuals under the age of 18 who qualified for SSI based on disability as of August 22, 1996, and whose eligibility might terminate because of changes made by Public Law 104–193." Supplemental Security Income; Determining Disability for a Child Under Age 18, 65 Fed.Reg. 54,747–48 (Sept. 11, 2000). It was under this provision that plaintiff's eligibility for SSI was redetermined.

The Social Security Administration ("SSA"), charged with promulgating new regulations to conform to the change, issued "interim final rules," effective April 14, 1997. Childhood Disability Provisions, 62 Fed.Reg. 6408. As these were to be more restrictive than previously, the SSA first issued "emergency instructions" that any case that would have been denied under the prior standard should also be denied under the new standard. The interim final rules established a three-step sequential-evaluation process pursuant to which the commissioner inquired whether a child: (i) had engaged in substantial gainful activity; (ii) suffered from one or more severe impairments; (iii) and had an impairment or combination of impairments that met, medically equaled or functionally equaled the Listing of Impairments for childhood disability. 20 CFR. § 416.924(a) (2000) (codifying interim final rules). A child's impairment(s) would be found functionally equal to a listed impairment if: (i) the child's condition resulted in "extreme limitation of one specific function, such as walking or talking" or "extreme limitations in one [broad] area of functioning or marked limitation in two [broad] areas of functioning"; (ii) the child was subject to "episodic" limitations such as "frequent illnesses or attacks"; or (iii) the child's condition required treatment that itself "cause[d] marked and severe functional limitations." 20 CFR § 416.926a(b)(1)-(4)(2000). The rules defined the "broad areas" of functioning as: (i) cognition/communication; (ii) motor; (iii) social; (iv) responsiveness to stimuli (birth to age 1 only); (v) personal (ages three to eighteen only); and (vi) concentration, persistence, or pace (ages three to eighteen only). 20 CFR § 416.926a(c)(4)(2000). For a claimant between the ages of three and eighteen, a "marked" limitation was defined as " 'more than moderate' and 'less than extreme[,]' ... interfer[ing] seriously with

the child's functioning"; while an "extreme" limitation would prohibit any "meaningful functioning in a given area." 20 CFR §§ 416.926a(c)(3)(i)(C) & (c)(3)(ii)(C)(2000). These "interim final rules" were in effect at the time of the ALJ's decision in this case.

On September 11, 2000 the SSA published final regulations implementing PRWORA (the "Final Rules"), effective January 2, 2001. 65 Fed.Reg. at 54,747. The formerly five broad areas of functioning morphed into six domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being. 20 CFR § 416.926a(a). A child's impairment(s) is of listing-level severity if it results in "marked" limitations in two of the domains, or an "extreme" limitation in one domain. 20 CFR § 416.926a(a). The regulations define a "marked" limitation as resulting when the "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(2). Day-to-day functioning may be seriously limited when an impairment or impairments limit only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id.* "Marked" limitation is also defined as a limitation that is "more than moderate" but "less than extreme." *Id.* As for an "extreme" limitation, the regulations require that the impairment or impairments interfere very seriously with the ability to independently initiate, sustain, or complete activities. 20 CFR § 416.926a(e)(3). Day-to-day functioning may be considered very seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id.* Obviously, an "extreme" limitation also means a limitation that is "more than marked." *Id.* On the other hand, "extreme" limitation does not necessarily mean a total lack or loss of ability to function. *Id.*

These final rules became effective on January 2, 2001, after the decision of the ALJ in this case, but before the Appeals Council denied plaintiff's request for review. In the commentary or preamble to the final rules, the SSA explained that the interim final rules would continue to apply until the effective date of these final rules, at which time the SSA would apply the final rules to new applications filed on or after the effective date of the rules. The SSA further stated that the final rules would "apply to the entire period at issue for claims that are pending at any stage of [SSA's] administrative review process, including claims that are pending administrative review after remand from a Federal court." 65 Fed.Reg. 54751. With respect to claims in which there was a final decision, and that are pending judicial review in Federal court, the SSA "expect[ed] that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."[1]

---

**1.** The SSA's "Explanation of the Effective Date" of the new rules provides, in full:

As we noted in the effective date section of this preamble, these final rules will be effective on January 2, 2001. We have delayed the effective date of the rules to give us time to provide training and instructions to all of our adjudicators and to revise Form SSA–

538 and other forms and notices before we implement the final rules. The interim final rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules. We will also apply them to the entire period at issue for

*Id.* When the final rules became effective, the instant case was still pending in the administrative review process, meaning that the final rules were to be applied. Although the ALJ had made his decision under the interim final rules, the Appeals Council, in denying plaintiff's request for review of that decision, stated that "the new regulations do not provide a basis to change the [ALJ's] decision." (R. 4).

■ Now, we reach the question of what, exactly, our review in this case should entail. The commissioner argues that we are to review the ALJ's decision under the final interim rules, pointing to the "expectation" that "[w]ith respect to claims in which we have made a final decision, and that are pending judicial review in Federal court … the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision." (*Memorandum in Support of Defendant's Motion*, at 10). There are several problems with this argument. First, as at least one other court has noted, the SSA's "expectation" does not mandate the court's application of the interim rules. *Abrams*, 2002 WL 1204954 at *4. Second, it is not clear that the SSA's "expectation" even applies to this case. The SSA's discussion regarding the effective date of the final rules concerns three categories of cases as of

that date: 1) new applications filed on or after the effective date; 2) claims pending at any stage of administrative review as of the effective date; and 3) claims pending judicial review where there has been a final administrative decision. The SSA indicates it will apply the final rules to the first two categories of claims, and "expects" that the courts will apply the rules effective at the time of the final administrative decision to the third category of claims. Certainly, as of the effective date of the final rules, there had been no final administrative decision on plaintiff's claim, nor was it pending judicial review. Arguably then, in that sense, the "expectation" does not apply. This is, instead, a case in the second category: pending administrative review as of the effective date of the final rules. Under this analysis, it would seem, the Commissioner's final decision should have applied the final rules, and this court's review should do the same.

To interpret the effective date of the final rules otherwise would create a rather unwieldy situation. Were we to accept the Commissioner's argument that the "expectation" is applicable, that would mean we would review the ALJ's decision in accordance with the interim final rules, even though the SSA's explanation dictates that plaintiff's case, pending as it was when the

claims that are pending at any stage of our administrative review process, including claims that are pending administrative review after remand from a Federal court. With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision. If the court determines that the Commissioner's final decision is not supported by substantial evidence, or contains an error of law, we would expect that the court would reverse the final decision, and remand the case for further ad-

ministrative proceedings pursuant to the fourth sentence of section 205(g) of the Act, except in those few instances where the court determines that it is appropriate to reverse the final decision and award benefits, without remanding the case for further administrative proceedings. In those cases decided by a court after the effective date of the rules, where the court reverses the Commissioner's final decision and remands the case for further administrative proceedings, on remand, we will apply the provisions of these final rules to the entire period at issue in the claim.

65 Fed.Reg. 54751.

final rules became effective, should be evaluated under the final rules. 65 Fed. Reg. 54751. This would render the SSA's assurance that it would apply the final rules to cases such as plaintiff's—still pending administrative review—meaningless. The actual result would merely be an administrative decision and a judicial review under outdated interim final rules. The Appeals Council's application of the final rules to plaintiff's claim and others similarly situated procedurally would be a merely academic exercise. The Commissioner's argument simply leads to a result that is far too incongruous to accept.

It makes far more sense that judicial review of plaintiff's case be performed under the final rules. Indeed, we suspect that the SSA's commentary or preamble regarding the effective date and application of the final rules would have been best served by an administrative remand of those cases falling into the second category for application of the final rules. The ALJ in the instant case obviously had no opportunity to perform the analysis under the final rules that the SSA states is now required. As it stands, the record before the court for review contains only the briefest allusion to the Final rules: "The Appeals Council considered the final regulations, effective January 2, 2001, implementing the childhood disability provisions of Public Law 104–193. The new regulations do not provide a basis to change the Administrative law Judge's decision." (R. 4).

■ The court is left to conclude that it can perform no effective review of the Commissioner's decision in this case. The Appeals Council's denial of a plaintiff's request for review of an ALJ's decision renders the ALJ's decision the final decision for judicial review. *Eads v. Secretary of DHHS,* 983 F.2d 815, 817 (7th Cir.1993). As already discussed, the ALJ's decision was made under the interim final rules, which are not applicable to this case. This precludes any meaningful review of the ALJ's decision. The Appeals Council did not mention the new regulations beyond a cursory reference; whether to indicate what effect they might have, how they differed from the previous regulations, or how they might apply to the evidence before the ALJ. Thus, it is unclear whether, in fact, the Appeals Council applied the final rules to plaintiff's case, as the regulations required. *Kittles Ex. Rel. Lawton v. Barnhart,* 245 F.Supp.2d 479, 491 (E.D.N.Y.2003). Even assuming the Appeals Council's denial of plaintiff's request for review were reviewable, then—it, of course is not, *Eads,* 983 F.2d at 817—there would still be nothing for the court to consider. The Commissioner's decision must sufficiently articulate the assessment of the evidence to assure the court that the important evidence was considered and enable the court to trace the path its reasoning. *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir.2002). The decision must build an accurate and logical bridge from the evidence to the conclusion to allow the reviewing court to assess the validity of the ultimate findings and afford a claimant meaningful judicial review. *Id.* The record in this case does not include any such decision. The Appeals Council's mention of the new rules is, at best, a band-aid applied to salvage the outdated ALJ's decision, to supply alternate grounds to support it. Such a tactic is unacceptable. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir.2002). As the court is precluded from conducting a meaningful review of the plaintiff's case, it has no alternative but to remand this matter to the Commissioner.

### III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is

DENIED, and the plaintiff's motion for summary judgment is GRANTED only insofar as it requests remand. This matter is remanded to the Commissioner for further proceedings consistent with this opinion, to include a new hearing and the taking of additional medical expert testimony given the currently applicable final rules.