**Marisol CRUZ, o/b/o Christopher Soto, an Infant, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 02 CIV. 2848RMB.**

United States District Court, S.D. New York.

Sept. 22, 2004.

Michael D. Hampden, Legal Services for Children, Inc., New York City, for Plaintiff.

John E. Gura, Jr., Assistant U.S. Attorney, U.S. Attorney's Office, Southern District of New York, for Defendant.

### ORDER

BERMAN, District Judge.

### I. Introduction

On April 15, 2002, Marisol Cruz ("Cruz") commenced this action on behalf of her infant son, Christopher Soto ("Plaintiff"), pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the denial by the Commissioner of Social Security (the "Commissioner") of Plaintiff's application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (the "Act"), based upon juvenile diabetes. (Plaintiff's Complaint ("Compl.") at 1.) On February 22, 2002, the Appeals Council of the Social Security Administration upheld the denial of Plaintiff's application for benefits based upon the findings of Administrative Law Judge Robin J. Artz ("ALJ") dated October 26, 2000. (Administrative Record ("Record" or "R.") at 5–7, 11–22.) On November 7, 2002, Plaintiff moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings (Plaintiff's Memorandum of Law ("Pl's.Br.")). and on March 24, 2003. Defendant cross-moved for judgment on the pleadings (Defendant's Memorandum of Law ("Def's.Br.")). For the reasons that follow, the matter is remanded to the Commissioner for further development of the administrative record.

### II. Background

Plaintiff was born on July 15, 1988. (Compl. ¶ 8; Answer ¶ 6.) On November 5, 1998. Plaintiff's father, Melvin Soto, filed an application for SSI benefits on Plaintiff's behalf alleging disability as a result of juvenile diabetes. (R. at 14–15; Compl. ¶ 10; Answer ¶ 8.) The ALJ held hearings on August 9, 2000 and October 3, 2000 at which only Plaintiff and his father testified. (R. at 23–55.) Plaintiff was represented by an attorney at the October 3, 2000 hearing. (Id.)

The ALJ's decision, dated October 26, 2000 ("ALJ Decision"), concluded that "[t]he claimant [who was then twelve years old] has not engaged in substantial gainful activity since the alleged onset of disabili-

ty, November 5, 1998 . . . . [and][t]he claimant has insulin dependent diabetes mellitus, which is a severe impairment." (R. at 20–21.) The ALJ further stated that "[t]he limitations resulting from the effects of the claimant's impairments do not meet, medically equal, or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4[,] . . . [t]he claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that results in marked and severe functional limitations . . . . [and] [t]he claimant has not been under a 'disability' as is defined in the Social Security Act at any time since November 5, 1998, through the date of this decision." (R. at 21–22.)[1]

On or about November 10, 2000, Plaintiff requested review of the ALJ Decision by the Appeals Council (R. at 9–10), and, thereafter, submitted additional medical evidence which had not been submitted to the ALJ (R. at 633–752). On or about February 22, 2002, the Appeals Council stated that "there is no basis . . . for granting your request for review," thus rendering the ALJ Decision the "final decision of the Commissioner." (R. at 5–7.) The Appeals Council further stated that it had "considered . . . the additional evidence identified on the attached Order of the Appeals Council [R. at 7, citing R. at 625–752], but concluded that neither the contentions nor the additional evidence provides a basis for changing the Administrative Law Judge's decision." (R. at 5.)

### III. Standard of Review

■ "A party is entitled to judgment on the pleadings only if it is clear that no material issues of fact remain to be resolved and that it is entitled to judgment as a matter of law." *Straw v. Apfel,* No. 98 Civ. 5089, 2001 WL 406184, at *2 (S.D.N.Y. Apr. 20, 2001); *see also* Fed. R.Civ.P. 12(c). The Court "must construe the pleadings in the light most favorable to the party opposing the motion and assume the truth of all facts pleaded by the party opposing the motion." *Firpo v. Shalala,* 94 Civ. 3368, 1995 WL 92264 at *2 (S.D.N.Y. Mar. 3, 1995), *aff'd,* 100 F.3d 943, 1996 WL 49258 (2d Cir.1996). While the "court is generally limited to considering the factual allegations set forth in the pleadings . . . the parties may incorporate certain materials into their pleadings" which may then be considered by the court. *Abiona v. Thompson,* 237 F.Supp.2d 258, 265 (E.D.N.Y.2002) ("Here, the parties refer to the administrative record, regulations, and ALJ decisions in the pleadings. Therefore, these documents are deemed incorporated in the pleadings and may properly be considered by the Court."); *see also* Fed.R.Civ.P. 12(c).

■ The reviewing court "must first be satisfied that the claimant has had a 'full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990) (citations omitted). It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing. *See, e.g., Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999). The Commissioner will ordinarily give the opinions reached by a plaintiff's treating physician considerable weight since such persons are "most likely to provide a detailed,

---

1. The ALJ also found that "[t]he claimant's adjustment disorder with mixed disturbance of emotions and conduct is not a severe impairment because it does not impose significant functional limitations upon the claimant." (R. at 21.) Plaintiff concedes that "his behavioral disorder was [not] disabling in itself" and is not the subject of his claim for relief. (Pl. Br. at 18–19.)

longitudinal picture of [the] medical impairment(s) and may bring unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 416.927(d)(2); *see Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999). While the ALJ is not bound to accept the findings reached by the treating physician, he "cannot reject ... [the] diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999).

■ Review of the Commissioner's decision involves two levels of inquiry. *See Tejada v. Apfel,* 167 F.3d at 773. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Id.* "Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Id.* "Substantial evidence ... 'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] ... requires more than a scintilla but less than a preponderance.'" *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir.1995) (citation omitted). "[T]he Court's function is limited to assessing whether the Commissioner applied the proper legal standards in making his determination and whether that determination is supported by the substantial evidence on the record as a whole." *Stancel v. Apfel,* No. 99 Civ. 9339, 2000 WL

1839758, at *3 (S.D.N.Y. Dec. 13, 2000). Remand to the Commissioner is appropriate where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980).

## IV. Analysis

SSI is a Federal program that provides benefits to needy, aged, blind or disabled individuals who meet statutory requirements. 42 U.S.C. § 1381. The eligibility requirements for children's disability benefits were amended in 1996 by The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "PRWORA"). To qualify for disability benefits under the PRWORA, a child under the age of 18 must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The ALJ must follow a three-step procedure. 20 C.F.R. § 416.924(a); *see generally Encarnacion ex rel. George v. Barnhart,* 331 F.3d 78, 84–85 (2d Cir.2003). First, the ALJ must determine whether the child is engaged in "substantial gainful activity."[2] 20 C.F.R. § 416.924(b). If so, the child is not disabled. *Id.* Second, the ALJ must determine whether the child has a "medically determinable impairment(s)

---

**2.** "Substantial gainful activity" is defined in 20 C.F.R. § 416.972 as "work activity that is both substantial and gainful":

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks. hobbies, therapy, school attendance. club activities, or social programs to be substantial gainful activity. 20 C.F.R. § 416.972.

that is severe." 20 C.F.R. § 416.924(c). If not, or if the impairment is a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child is not disabled. *Id.* Third, if the impairment is severe, the ALJ must determine whether the impairment meets or is medically or functionally equal to a disability listed in the designated "Listing of Impairments." 20 C.F.R. § 416.924(c); *see* 20 C.F.R. Pl. 404, Subpt. P, App. 1 (the "Listing").

The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since the alleged onset of disability, November 5, 1998. . . . [and][t]he claimant has insulin dependent diabetes mellitus, which is a severe impairment." (R. at 20–21.)[3] The ALJ also found that Plaintiff's impairment did "not meet, medically equal, or functionally equal the criteria of any of the listed impairments." (R. at 21–22.)

Both in his Complaint (Compl.¶¶ 16–24) and his motion for judgment on the pleading (Pl. Br. at 11–20), Plaintiff claims that his impairment does satisfy the SSI Listing for juvenile diabetes, 109.08(A) and (B), which provides as follows:

> *Juvenile diabetes mellitus (as documented in 109.00C) requiring parenteral [injected] insulin.* And one of the following, despite prescribed therapy:

**3.** Diabetes mellitus is "a chronic metabolic disorder in which utilization of carbohydrate is impaired and that of lipid and protein enhanced; it is caused by an absolute or relative deficiency of insulin. . . ." *Stedman's Medical Dictionary* 490 (27th ed. 2000) ("*Stedman's*"). Insulin-dependent diabetes mellitus is a "severe diabetes mellitus, often brittle, usually of abrupt onset during the first two decades of life but can develop at any age; characterized by polydipsia, polyuria, increased appetite. weight loss, low plasma insulin levels, and susceptibility to ketoacidosis; . . . insulin therapy and dietary regulation are

> A. Recent, recurrent hospitalizations with acidosis; or
>
> B. Recent, recurrent episodes of hypoglycemia . . . .

Listing 109.08.[4] Plaintiff asserts that he suffered from both "recurrent hospitalizations with acidosis" and "recurrent episodes of hypoglycemia." (Pl. Br. at 11–20, citing Listing 109.08(A) & (B).)

**A. It is Unclear From the Record Whether the ALJ Applied the Proper Legal Standard or Adequately Developed the Record Regarding Plaintiff's Claim of "Recent, Recurrent Hospitalizations With Acidosis"**

■ The ALJ Decision seemed to focus upon medical reports indicating that Plaintiff's diabetes and blood sugar levels were under "good" or "fair control." (R. at 16–17.) Although the ALJ Decision described Plaintiff's hospitalizations from October 27 to November 2, 1998, and from April 22 to April 23, 2000 (Plaintiff's September 14, 2001 hospitalization occurred after the ALJ Decision), the Decision failed to analyze whether they were "recent" or "recurrent." *See Ramos v. Barnhart*, No. 02 Civ. 3127, 2003 WL 21032012, at *9 (S.D.N.Y. May 6, 2003) ("While Listing 109.08 does not define 'recent' or 'recurrent' episodes of hypoglycemia, the testimony concerning [claimant's] episodes re-

necessary." *Stedman's* 490. (*See* Pl. Br. at 3–9; Def. Br. at 4–5.)

**4.** Listing 109.00C provides:

> *Documentation.* Description of characteristic history, physical findings, and diagnostic laboratory data must be included. Results of laboratory tests will be considered abnormal if outside the normal range or greater than two standard deviations from the mean of the testing laboratory. Reports in the file should contain the information provided by the testing laboratory as to their normal values for that test.

quired analysis of what these terms meant as applied to her case."). Also, it is unclear whether the ALJ Decision was supported by substantial evidence. The Defendant argues that Plaintiff's October 27, 1998 and September 14, 2001 hospitalizations may be disregarded as either (1) outside the relevant period, or (2) not occurring "despite prescribed therapy." as Listing 109.08(A) requires. (Def. Br. at 18–20.) But these conclusions were not included in (much less analyzed by) the ALJ Decision. *See Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999).

The Court is remanding on the hospitalization claim because "there are gaps in the administrative record [and] the ALJ [may have] applied an improper legal standard." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *see also Fernandez v. Apfel,* No. 98–CV–6194, 2000 WL 271967, at *9 (E.D.N.Y. Mar. 7, 2000). At the same time, the Court denies Plaintiff's request for a "remand solely for [the] calculation of benefits" (Pl. Br. at 20; *see* Compl. at 5), because this is not a case in which the "record ... compel[s] but one conclusion," *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) ("where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration").

### B. The ALJ Did Not Adequately Develop the Record Regarding Plaintiff's Hypoglycemia

The ALJ appears to have disregarded probative evidence that Plaintiff may have suffered from recurrent hypoglycemia. For one thing, the record suggests that Plaintiff generally diligently followed his treatment regimen. Plaintiff testified (credibly, according to the ALJ) that he

has "always taken [his medication] since [he was] instructed ... to do it in [19]98." (R. at 44.)[5] Despite this regimen, he testified about symptoms characteristic of recurrent low blood sugar:

Q. Christopher, how many times per day do you self test for your blood sugar?

A. Four times a day.

Q. Four times a day? And how many times a day would you self inject?

A. Two times a day, but only if I'm high—like for breakfast and dinner, I would inject, you know, two times a day I would say yeah. But only—let's say if my blood sugar is high for lunch and at night, then I have to take insulin there too.

Q. All right. And could you describe for the Judge how you feel when you become hypoglycemic or low blood sugar?

A. When I'm low blood sugar, I feel very low—I feel like fainting. I, I can feel weak, I—shaky—I'm sweaty. I see blurry vision. I'm dizzy.

(R. at 49–50.) *See Ramos v. Barnhart,* No. 02 Civ. 3127, 2003 WL 21032012, at *9 (S.D.N.Y. May 6, 2003) ("In reaching his conclusion that [claimant] failed to demonstrate a listed impairment, [the] ALJ ... passed over the testimony presented at the hearing concerning [claimant's] hypoglycemia, ... testimony that in his decision he twice referred to as "credible" .... For example, [claimant] testified that she had two to three hypoglycemic attacks per week notwithstanding that she adhered to her prescribed therapy."). And, the ALJ failed to ask Plaintiff any follow-up questions regarding the nature and severity of his symptoms. *See, e.g., Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir.2000) ("The ALJ

---

5. The ALJ concluded that "[t]he claimant's ... statements about his symptoms, limita- tions and activities are credible." (R. at 21 ¶ 9.)

has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel.").

An August 2000 letter from Drs. Tania Burgert and Joan DiMartino, Plaintiff's treating physicians at Montefiore Medical Center, stated that Plaintiff's "blood sugars have been in fair control." (R. at 216.) At the same time, the remainder of the sentence in that letter noted: "frequent high readings (above 400mg/dl)," and the sentence that followed stated: "Occasionally his blood sugar readings are low (below 60 mg/dl)." (R. at 216.) Another report by Dr. DiMartino described Plaintiff's "current symptoms," as of May 17, 1999, as "occasional hypoglycemia." (R. at 171.) *See, e.g., Morales ex rel. Morales v. Barnhart,* 218 F.Supp.2d 450, 460 (S.D.N.Y. 2002) ("There is no reason to believe that 'occasional' hypoglycemia does not constitute 'recurrent' hypoglycemia.") (quoting *Aviles v. Bowen,* 715 F.Supp. 509, 514 (S.D.N.Y.1989)).

An October 16, 2000 examination report by Plaintiff's treating physician at Maimonides Hospital, Dr. Henry Anhalt, stated: "Review of his blood sugars demonstrate significant and profound variability with lows and highs." (R. at 635.) The same report described Plaintiff as a "Poorly controlled Type I diabetic with sliding scale." *Id.*[6]

■ The ALJ cannot " 'pick and choose' evidence in the record that supports his conclusions." *Wiggins v. Barnhart,* No. 01 Civ. 4285, 2002 WL 1941467, at *7 (S.D.N.Y. Aug. 21, 2002). "Remand is particularly appropriate where, as here, we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.' " *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996) (quoting *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982)).

Plaintiff's request that the Court "remand solely for [the] calculation of benefits" (Pl. Br. at 20; *see* Compl. at 5) is denied, as this is not a case in which the "record ... compel[s] but one conclusion." *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987).

## C. Revised Regulations

The PRWORA created a new set of standards for determining whether a child's impairment was "functionally equivalent" to a listed disability. The Social Security Administration first implemented these standards on February 11, 1997, when it published Interim Final Rules ("Interim Rules"). *See Supplemental Security Income; Determining Disability for a Child Under Age 18; Interim Final Rules With Request for Comments,* 62 Fed.Reg. 6408 (Feb. 11, 1997) (codified at 20 C.F.R. pts. 404 & 416 (1998)). Subsequently, on September 11, 2000, the Social Security Administration published amended final rules effective January 2, 2001 ("Final Rules"), which differ materially from the Interim Rules. *See Supplemental Security Income; Determining Disability for a Child Under 18,* 65 Fed.Reg. 54,747 (Sept. 11, 2000) (codified at 20 C.F.R. pts. 404 & 416 (2002)); *see generally Encarnacion ex rel. George v. Barnhart,* 331 F.3d 78, 84–85 n. 3 (2d Cir.2003); *Kittles Ex. Rel. Lawton v. Barnhart,* 245 F.Supp.2d 479, 488–91 (E.D.N.Y.2003).[7]

---

**6.** This report, dated just prior to the October 26, 2000 ALJ Decision, was properly submitted to the Appeals Council, 20 C.F.R. § 416.1470(b), but there is no analysis of it in the Appeals Council's February 22, 2002 decision. (R. at 5–7.)

**7.** Among other things, "three out of the four methods for evaluating functional equivalence

The October 26, 2000 ALJ Decision was governed by the Interim Rules because the Final Rules had not yet become effective. *See* 65 Fed.Reg. at 54751 ("The interim final rules will continue to apply until the effective date of these final rules."). (Def. Br. at 17 ("the ALJ found that [Plaintiff] was not disabled under the interim final rules").) The Final Rules should, however, be applied to new applications filed after January 2, 2001, and to "the entire period at issue for claims that are pending at any stage of our administrative review process," 65 Fed.Reg. at 54751; *see Kittles,* 245 F.Supp.2d at 490, which includes an "Appeals Council review," 20 C.F.R. § 404.900(a). *See Kittles,* 245 F.Supp.2d at 491 ("[T]he Appeals Council was bound to apply the *Final Rules* in assessing plaintiff's request for review. Although the ALJ's decision on June 9, 2000 was rendered under the Interim Rule regime, the Appeals Council decision on June 15, 2001 was made after January 2, 2001, the effective date of the Final Rules."); *accord Booker–Shelton ex rel. Booker–Morgan v. Barnhart,* 266 F.Supp.2d 818, 819, 821–23 (N.D.Ill.2003) (collecting cases); *Marnell v. Barnhart,* 253 F.Supp.2d 1052, 1055, 1076 n. 13 (N.D.Iowa 2003); *Mayfield v. Barnhart,* No. 01 C 9418, 2003 WL 223310, at *6–7 (N.D.Ill. Jan. 30, 2003); *Jefferson v. Barnhart,* 209 F.Supp.2d 1200, 1205 (N.D.Okla. 2002).[8]

While the Appeals Council recognized the applicability of the Final Rules *see* (R. at 5)("The Appeals Council considered the final regulations, effective January 2, 2001,

implementing the childhood disability provisions of Public Law 104–193. The new regulations do not provide a basis to change the Administrative Law Judge's decision."), it did not clarify how the Final Rules differ from the Interim Rules or whether such differences would affect the claims at issue. "[T]o attempt to review the Commissioner's decision for substantial evidence utilizing the Final Rules is a bit like comparing apples and oranges, since the ALJ's decision was made under a completely different rule regime-namely, the Interim Rules." *Kittles,* 245 F.Supp.2d at 491–93; *accord Booker–Shelton,* 266 F.Supp.2d at 821–23; *Mayfield,* 2003 WL 223310, at *6–7 (remanding because, *inter alia,* "the court is not in a position to determine the impact of the evidence when considered in light of the format of the final rules"); *Jefferson,* 209 F.Supp.2d at 1205 ("Other than the one sentence explanation . . ., the Appeals Council gives no explanation or reasons as to why Plaintiff's impairment was not of listing-level severity (i.e., functionally equivalent) under the new regulations . . ., and the ALJ necessarily did not perform the analysis now required. . . . The Court is, therefore, left with nothing to review.").

## V. Conclusion and Order

For the foregoing reasons, the case is remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). No determination is made by this Court as to the merits of Plaintiff's claims.

---

have been eliminated, leaving only the second method of evaluating a child's functional limitations in broad areas of functioning," and "instead of requiring an assessment of the child's impairments in 'five broad areas of functioning,' the Final Rules require an evaluation of the child's impairments in 'six domains.'" *Id.* at 488–89.

8. *Cf. Gomez ex rel. Gomez v. Barnhart,* No. 01 Civ. 2288, 2003 WL 21242971, at *2 (S.D.N.Y. May 28, 2003); *Campos ex rel. Cruz v. Barnhart,* No. 01 Civ. 10005, 2003 WL 21243036, at *5 n. 3 (S.D.N.Y. May 28, 2003).

The Clerk is respectfully directed to enter judgment and close this case.