**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WENDY BRIGGS, on behalf of
Johnny Austin Briggs, a minor,

      Plaintiff - Appellant,

v.

LARRY G. MASSANARI, Acting
Commissioner of Social Security
Administration, [*]

      Defendant - Appellee.

No. 00-7094

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 99-CV-385-P)**

---

Submitted on the briefs: [**]

Richmond J. Brownson, Timothy M. White, Tulsa, Oklahoma, for Plaintiff-
Appellant.

---

[*] On March 29, 2001, Larry G. Massanari became the Acting
Commissioner of Social Security. In accordance with Rule 43(c)(2) of the
Federal Rules of Appellate Procedure, Mr. Massanari is substituted for Kenneth
S. Apfel as appellee in this action.

[**] At the parties' request, the case is unanimously ordered submitted
without oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

Bruce Green, United States Attorney, Muskogee, Oklahoma; Tina M. Waddell, Regional Chief Counsel, Mark J. Kingsolver, Deputy Chief Counsel, Amy J. Mitchell, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Dallas, Texas, for Defendant-Appellee.

Before **SEYMOUR** , **BALDOCK** , and **LUCERO** , Circuit Judges.

**LUCERO** , Circuit Judge.

Wendy Briggs brought this case to obtain judicial review of the Commissioner's determination that her minor child, Johnny Austin Briggs, does not qualify for disability benefits. The district court affirmed the Commissioner's decision. Exercising jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand for further proceedings.

Johnny Briggs was born on July 22, 1992 with microtia and canal stenosis of the left ear. As a result, he has borderline normal hearing in his right ear and moderate hearing loss in the left. His speech development is poor and delayed. Ms. Briggs applied for Title XVI childhood disability benefits on her son's behalf, which the Commissioner denied. He concluded that although Johnny has severe impairments, he does not meet or equal any impairment described in the listing of impairments.

"We review the district court's decision     de novo  and therefore must independently determine whether the agency's decision (1) is free of legal error

and (2) is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997) (quotations and brackets omitted).

A child under eighteen years of age is "disabled" if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A sequential three-step process guides the Commissioner's determination of whether a child meets this criteria. The administrative law judge ("ALJ") must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 416.924(a).

In making the third determination—whether a child's impairment meets or equals a listed impairment— the ALJ must consider whether the impairment, alone or in combination with another impairment, "medically equals, or functionally

equals the listings." [1]  Id.  The ALJ assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. [2]

Id. § 416.926a(a)(1)–(3).  The ALJ considers how a child functions in his

---

[1]  Functional equivalency means that the impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ."  20 C.F.R. § 416.926a(a).  A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Secretary] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  Id.  The regulations state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

Id. §416.926a(e)(2)(iii).
An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(3)(i).  It can be shown by a valid score on a standardized test that is three or more standard deviations below the mean.  Id.

[2]  The regulations found at 20 C.F.R. § 416.926a were amended effective January 2, 2001.  We refer to these most recent amendments in this opinion.  The amendments mark a major change in the evaluation process employed by ALJs in child disability cases and provide a single method of evaluation based only on domains of functioning.  See 65 Fed. Reg. 54747, 54755 (Sept. 11, 2000).  The definitions and testing results for marked and extreme disabilities, however, have not changed.  See id. at 54756.

activities "in terms of six domains": [3] "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1)(i)–(vi).

Ms. Briggs contends that her son meets the requirements of listing 112.02, the listing for organic mental disorders. To show that her son has a marked impairment, she points to tests on which he scored two standard deviations below the mean in two domains.

The ALJ determined that Johnny was not disabled because some testing showed that his speech problem, a result of his partial deafness, had resulted in a speech development delay of only seven months. One tester noted that he had an age appropriate attention span. He knew how old he was, and he knew some colors. He enjoys school and has some friends.

The record, however, contains evidence that supports a finding of disability. Chief in this category are the standardized test results showing claimant to be two standard deviations below the mean in two domains. [4] Testing showed that he had a severe articulatory deficit for single word responses and

---

[3] "Domains" are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

[4] "The use of standardized tests is the preferred method of documentation if such tests are available." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.00(C).

connected speech and that only twenty-five percent of his speech was intelligible. Other testing similarly showed that his conversational speech was unintelligible, placing him in the fifth percentile. He qualified for speech therapy at school. [5] His kindergarten teacher noted that he had a very short attention span and was a distraction in the class. Johnny himself gave limited testimony, much of which was unintelligible. He did not know his birthday, and his mother testified that he did not know his numbers or the alphabet.

Although t he ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is "significantly probative." Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996). No evidence was presented that the test results were invalid or that the tests were not generally accepted in the medical community. The only comment addressing the tests was from the medical expert who stated that "[t]he Battelle and the Social Security listings . . . are two separate things." (II Appellant's App. at 211.) The ALJ erred by ignoring the test results completely.

If the child claimant is unable to adequately describe his symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition. 20 C.F.R. § 416.928(a). In such a case, the ALJ must make specific

---

[5] Placement in a special education program is a relevant factor, but is not conclusive because of the variability in school districts as to their criteria for special education placement. See id. § 112.00(C)(3).

findings concerning the credibility of the parent's testimony, just as he would if the child were testifying. Cf. Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988) ("The failure to make credibility findings regarding the [mother's] critical testimony fatally undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability."). Based upon his evaluation of the entire case record, the ALJ "may find all, only some, or none of an individual's allegations to be credible." Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, S.S.R. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ deemed the testimony of Johnny "and his mother unconvincing, not substantiated by objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations." (II Appellant's App. at 19.) "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). In the present case, we must view the ALJ's determination with skepticism. A significant portion of the record evidence supports the testimony, and the ALJ must explain why he has determined that the testimony is not credible. Standard boilerplate language will not suffice. Evaluation of Symptoms in Disability Claims, 1996 WL 374186, at *4 (stating

that credibility determinations can not be based on intangible or intuitive reasons; rather they "must be grounded in the evidence and articulated in the determination or decision"); see also Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (stating that a credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings" (quotation omitted)). "This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." Evaluation of Symptoms in Disability Claims, 1996 WL 374186, at *4.

Without explanation, the ALJ passed over significant probative record evidence and deemed crucial testimony incredible. These errors are fatal, and we therefore **REVERSE** the judgment of the district court and **REMAND**. The district court is instructed to remand the case to the Commissioner for further proceedings consistent with this opinion.