**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOYCE JEFFERSON, on behalf of
Ray Lee Jefferson,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

       Defendant-Appellee.

No. 02-5115
(D.C. No. 01-CV-291-M)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **McKAY** , and **BALDOCK** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Joyce Jefferson filed an application for Supplemental Security Income on behalf of her minor son Ray Lee Jefferson. The Commissioner denied benefits and the district court [1] affirmed the decision. Ms. Jefferson appeals. Our jurisdiction arises under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We reverse and remand for further proceedings.

Ray Lee was born on July 9, 1989. He was nine years old when the application for benefits was filed, and he was ten at the time of the hearing before an administrative law judge (ALJ). The ALJ took testimony from Ray Lee and his mother and received documentary evidence, including records from Tulsa Public Schools and a developmental psychological report by A. Owen Fonkalsrud, M.A., the consulting expert. The ALJ denied benefits, concluding that Ray Lee had a learning disability that qualified as a severe impairment, but his impairment did not meet or equal a listing.

On appeal, Ms. Jefferson challenges the ALJ's determination that Ray Lee's disability did not meet a listing. She also maintains that the ALJ improperly discounted her testimony.

We review de novo the district court's judgment; therefore, we independently evaluate the agency's decision to determine whether it is free of

_____

[1] The parties consented to proceed before a magistrate judge, pursuant to 28 U.S.C. § 636(c)(1).

legal error and supported by substantial evidence. <u>Briggs ex rel. Briggs v. Massanari</u>, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence "is adequate relevant evidence that a reasonable mind might accept to support a conclusion." <u>Kepler v. Chater</u>, 68 F.3d 387, 388-89 (10th Cir. 1995). The ALJ's decision, affirmed by the Appeals Council, is the final agency decision. <u>Id.</u> at 388.

## I.  THE LISTINGS

### A.  Statutory and Regulatory Framework

A child under age eighteen is "disabled" if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ applies a three-step process to evaluate (1) whether the child is engaged in substantial gainful activity, (2) whether the child has an impairment or combination of impairments that is severe, and (3) whether the impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 416.924(a).

Ms. Jefferson asserts that Ray Lee meets the requirements of listing 112.05, the listing for mental retardation. She argues that her son meets the criteria for sub-listings 112.05A, 112.05D, and 112.05E. Each sub-listing requires "significantly subaverage general intellectual functioning with deficits in adaptive

-3-

functioning." 20 C.F.R. Pt. 404, App. 1, Subpt. P, Part B, § 112.05. For sub-listing 112.05A, the child must also exhibit "marked" impairment [2] in at least two of the following areas: cognitive/communicative functioning, social functioning, personal functioning, or maintaining concentration, persistence, or pace.

Sub-listing 112.05D requires an IQ of "60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." Listing 112.05D. The additional limitation must be "severe" to meet this sub-listing. Id. 112.00(A).

Sub-listing 112.05E requires an IQ of 60 through 70 and marked impairment in at least one of the following areas: social functioning, personal functioning, and maintaining concentration, persistence, or pace.

## B. Discussion

The ALJ evidently determined that Ray Lee met the threshold requirement for listing 112.05 (significantly subaverage general intellectual functioning with deficits in adaptive functioning) and then evaluated Ray Lee's functioning in the other areas identified above. He found that Ray Lee had (1) moderate, but less

---

[2] "Marked" applies when the "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is equivalent to the functioning expected on standardized testing "with scores that are at least two, but less than three, standard deviations below the mean." Id.

than marked limitation of functioning in the cognitive/communicative area, (2) no limitation of motor functioning, (3) no limitation of social functioning, (4) no limitation of personal functioning, and (5) moderate, but less than marked limitation of concentration, persistence, and pace. R. Vol. II, at 17-19. He also found that Ray Lee had an IQ of 70. See id. at 16. The ALJ provided only very limited reasoning and analysis, thus hampering our review of his decision.

"'It is well settled that administrative agencies must give reasons for their decisions.'" Kepler, 68 F.3d at 391 (quoting Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)). The ALJ is required to consider carefully all relevant evidence and to link his findings to specific evidence. Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001). Although the ALJ is not required to discuss every item of evidence, the record must show that he considered all of the evidence. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). The ALJ "may not ignore evidence that does not support his decision, especially when the evidence is significantly probative." Briggs, 248 F.3d at 1239 (quotation omitted).

Ms. Jefferson challenges the ALJ's findings regarding Ray Lee's limitations in the areas of cognitive/communicative functioning, social functioning, and maintaining concentration, persistence, or pace.

### (i) Cognitive/communicative functioning

The ALJ's finding that Ray Lee had moderate, but less than marked limitation of functioning in the cognitive/communicative area was based on the ALJ's determination that he "scored IQ's within the borderline range of intellectual functioning, requiring part time special education classes." R. Vol. II, at 17. Although "[p]lacement in a special education program is a relevant factor, [it] is not conclusive because of the variability in school districts as to their criteria for special education placement." Briggs, 248 F.3d at 1238 n.5. The ALJ apparently determined that Ray Lee's cognitive and communicative functioning was moderately limited because he was in special education classes only part time. But even in special education classes, "[h]is progress, even with individual attention[,] has been limited." R. Vol. II, at 88. He was described as often being "lost" in class. Id.

The ALJ interpreted as evidence of nondisability a statement in a school report that Ray Lee's "measured achievement [was] near to above expectancy." Id. at 132. The statement can reasonably be interpreted to mean that Ray Lee was achieving as expected for a mentally retarded child. But Ray Lee's abilities and limitations must be compared to those of children his age who do not have impairments. 20 C.F.R. § 416.924a(b)(3). Therefore, on remand, the ALJ should consider and discuss whether this statement is evidence of nondisability.

The record contains standardized test results that Ms. Jefferson alleges demonstrated that Ray Lee's functioning was two standard deviations below the mean, which qualified as marked limitations.       See 20 C.F.R. § 416.926a(e)(2)(i). In assessing the severity of a child's limitations, "[t]he use of standardized tests is the preferred method of documentation if such tests are available."       20 C.F.R. Pt. 404, App. 1, Subpt. P, Part B, § 112.00(C).  When he was a fifth-grader, Ray Lee's standardized test scores were in the first percentile for reading, with only two scores above the ninth percentile.  R. Vol. II, at 130.  Accordingly, in addition to the other evidence pertaining to Ray Lee's cognitive and communicative functioning, on remand the ALJ should evaluate whether the standardized test scores were two or more standard deviations below the mean.

### (ii)  Social functioning

The record contains several references to Ray Lee's limitations in social functioning.  His mother testified that he had no friends.  R. Vol. II, at 39.  His fourth grade special education teacher wrote that Ray Lee tended "to play by himself or stand and watch others," although he was thoughtful and eager to please.  Id. at 86.  She referred to "one good friend that helps him remain 'on task,'" and that student was a peer tutor.       Id.  A public school referral for multidisciplinary services noted that Ray Lee had no discipline problems, but he exhibited "an extreme lack of social judgment."       Id. at 88.  A comprehensive

assessment report noted that one of Ray Lee's relative weaknesses was "social judgment." Id. at 112. On remand, the ALJ should evaluate and discuss the evidence pertaining to Ray Lee's social functioning.

### (iii) Concentration, persistence, and pace

The ALJ assessed Ray Lee's limitation in concentration, persistence, and pace as moderate, but less than marked, relying on a contradiction between Ms. Jefferson's statement that Ray Lee had behavioral problems, [3] and the consulting expert's finding that his Attention Deficit Hyperactivity Disorder was "only 'mild.'" R. Vol. II, at 19. The record contains statements by Ray Lee's public school teachers and evaluators that he had difficulty concentrating, he gave up easily and he required additional time and supervision to complete assignments. See id. at 86-87, 95, 113. "[S]chool records are an excellent source of information concerning function . . . ." 20 C.F.R. Pt. 404, App. 1, Subpt. P, Part B, § 112.00(C)(3). In addition, Ms. Jefferson testified that Ray Lee required close supervision to perform household chores and homework. R. Vol. II, at 39-40. Mr. Fonkalsrud also reported that Ray Lee was distracted and "gave up quickly" when the examiner refused to give him test items to take home. Id. at 116. Mr. Fonkalsrud described Ray Lee's attention span as "fair." Id. at 117.

---

[3] The ALJ did not explain what "behavioral problems" Ms. Jefferson reported. She testified at the hearing that Ray Lee had no problems with behavior at school. R. Vol. II, at 39.

On remand, the ALJ should discuss and evaluate the evidence pertaining to Ray Lee's limitations on concentration, persistence, and pace.

## II.  CREDIBILITY OF CHILD'S PARENT

If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent.  20 C.F.R. § 416.928(a).  "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying."  Briggs, 248 F.3d at 1239.

In this case, the ALJ made no findings about Ms. Jefferson's credibility. He simply rejected it as "credible only to the extent that [it was] supported by the evidence of record as summarized in the text of [his] decision."  R. Vol. II, at 20. This "[s]tandard boilerplate language will not suffice" as an explanation for finding Ms. Jefferson's testimony not credible, particularly since her testimony was supported by other evidence in the record.  Briggs, 248 F.3d at 1239.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED and REMANDED.  The district court is directed to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge