FILED
United States Court of Appeals
Tenth Circuit

December 15, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KIMBERLEY BROWN, on behalf of
Z.D.F., a minor,

        Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

        Defendant - Appellee.

No. 14-5043
(D.C. No. 4:13-CV-00146-TCK-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

---

Kimberley Brown applied for Supplemental Security Income benefits on

behalf of her minor child, Z.D.F. After a hearing at which she testified before an

administrative law judge (ALJ), the Commissioner denied Ms. Brown's application

and the district court affirmed. Now on appeal, Ms. Brown contends the ALJ failed

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to evaluate her credibility or properly analyze Z.D.F.'s limitations. Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand

for further proceedings.

I

Z.D.F. was twenty-three months old when Ms. Brown applied for benefits, and

three-and-a-half years old at the time of the hearing. According to Ms. Brown,

Z.D.F. suffers from speech/language delays and behavioral problems attributable to

sagittal synostosis, a condition in which the suture at the top of the child's head fuses

prematurely, causing "the head to grow long and narrow, rather than wide," Aplt.

App., Vol. 1 at 14. Before the ALJ, Ms. Brown testified that Z.D.F. was aggressive

and would hit family members. She also noticed that his speech was not

"understandable," *id.*, Vol. 2 at 39, and he had "dents in his head," *id.* at 40. This led

her to seek out a behavioral specialist who, via CAT scan, diagnosed Z.D.F.'s

condition. Ms. Brown testified that after obtaining a second opinion, doctors

confirmed that Z.D.F.'s developmental delays were associated with his skull

condition. Although doctors recommended surgery, Ms. Brown elected to put it off

because there was no evidence of inter-cranial pressure and she wanted to research

the side-effects of the proposed surgery.

Ms. Brown also testified that Z.D.F. received speech and occupational therapy

to help with his developmental delays. She stated that he had difficulty focusing at

preschool and participating in group settings. Although he could identify some

colors and animals, he did not know the alphabet and could not count to ten. He also had trouble pronouncing letters, and, despite improvements with speech therapy, Ms. Brown could not understand him "[m]ost of the time," *id.* at 48. Additionally, she testified that Z.D.F. could not hold a pencil and, although he could generally use utensils such as forks and spoons, he could not brush his teeth or fully dress himself. As for his social interactions, Ms. Brown testified that he cried every day when she dropped him off, he refused to interact with the other kids, and he was always "in somebody's lap" when she came to pick him up. *Id.* at 50.

After summarizing this testimony and some of the medical evidence, the ALJ concluded at step three of the three-step sequential process applicable to determining a child's claim for benefits, *see Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (describing process); 20 C.F.R. § 416.924(a) (same), that Z.D.F. was not disabled. The ALJ determined that Z.D.F. had severe impairments of speech/language delay and mental organic impairment,[1] but he found that these impairments did not meet or functionally equal a listing contained in 20 C.F.R. pt. 404, subpt. P, App. 1. *See* 20 C.F.R. § 416.924(a). The Appeals Council denied review, and the district court adopted a magistrate judge's report and recommendation to affirm the denial of benefits. Ms. Brown subsequently appealed.

---

[1]    The ALJ labeled Z.D.F.'s condition "mild organic impairment." Aplt. App., Vol. 2 at 23. The relevant listing, however, refers to "Organic Mental Disorders." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.02. Because the ALJ evaluated listing 12.02, we employ the regulatory language referring to organic *mental* impairment.

II

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). "In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (brackets and internal quotation marks omitted).

*A. Credibility*

Ms. Brown first contends we must remand this case to the agency because the ALJ failed to evaluate her credibility. We agree.

"In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Id.* at 1176 (citing 20 C.F.R. § 416.928(a)). "'In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying.'" *Id.* (quoting *Briggs*, 248 F.3d at 1239). In doing so, "the [ALJ] must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). "This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." *Id.*

- 4 -

Here, however, the ALJ engaged in no credibility analysis at all. He merely summarized Ms. Brown's testimony without saying whether it was credible or not. This was insufficient to satisfy the ALJ's duty to evaluate her credibility. *See Briggs*, 248 F.3d at 1239. Indeed, as the ALJ recognized (albeit in boilerplate language), because Z.D.F. had severe medically determinable impairments that could reasonably be expected to produce his symptoms, the ALJ was obligated to assess Ms. Brown's credibility to determine the intensity, persistence, and functionally limiting effects of those symptoms. *See* Aplt. App., Vol. 2 at 23-24; *see also* SSR 96-7p, 1996 WL 374186, at *3-4 (requiring adjudicator to make a finding about credibility when there is a medically determinable impairment that could reasonably be expected to produce the symptoms complained of). But inexplicably, the ALJ failed to assess Ms. Brown's credibility. Without that assessment, the ALJ could not properly determine whether Z.D.F. was disabled.

The government suggests the error was harmless because we can tell the ALJ at least considered Ms. Brown's testimony. The problem, though, is that we cannot tell *how* the ALJ considered her testimony. If we accept the government's assertion that the ALJ found Ms. Brown less than fully credible, then the ALJ erred by failing to "closely and affirmatively" link his adverse credibility finding to substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation marks omitted). If, however, the ALJ found Ms. Brown's testimony credible, then the error could not have been harmless because her testimony could

- 5 -

reasonably support a finding of disability. The government disputes this, citing evidence that purportedly undermines Ms. Brown's testimony and supports the ALJ's decision. Yet there was also evidence confirming Z.D.F.'s condition and describing him as "severely developmentally delayed." Aplt. App., Vol. 2 at 315. The ALJ did not consider or evaluate this evidence, and we will not engage in a post-hoc attempt to salvage the ALJ's decision where the ALJ himself did not discuss or weigh it. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). Under these circumstances, we cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Consequently, harmless error analysis is inappropriate, and this case must be remanded to the Commissioner for a proper credibility evaluation.

### B. Analysis of Z.D.F.'s Limitations[2]

Ms. Brown also contends the ALJ incorrectly analyzed Z.D.F.'s limitations in concluding that he did not meet a listing. Here again, we agree.

At step three, an ALJ must determine whether a claimant's impairments meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. § 416.924(a).

---

[2] Ms. Brown labels her second argument as one challenging the ALJ's decision as not supported by substantial evidence. The substance of her brief, however, contends that the ALJ incorrectly analyzed Z.D.F.'s limitations.

To functionally equal a listing, an impairment must result in marked limitations in two, or extreme limitations in one, of the following six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. *Id.* § 416.926a(a), (b)(1), (d).

The ALJ concluded that Z.D.F. did not meet a listing because he had no marked or extreme limitations in any of the six domains. But the ALJ cited no evidence in reaching his conclusion for the first two domains, and he discussed only minimal evidence in reaching his conclusion for the last four domains. For the first domain, the ALJ simply stated, "The claimant has less than marked limitation in acquiring and using information." Aplt. App., Vol. 2 at 25. Similarly, for the second domain, the ALJ stated, "The claimant has less than marked limitation in attending and completing tasks." *Id.* at 26. We need not recite the ALJ's brief explanations for the remaining domains because his summary conclusions for the first two inhibit our review and require reversal.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (brackets and internal quotation marks omitted). An ALJ, in deciding whether a claimant has marked or extreme limitations within each of the six domains, must consider the claimant's "functional limitations resulting from all . . . impairments,

including their interactive and cumulative effects."  20 C.F.R. § 416.926a(e)(1)(i).
But we have no way of knowing whether the ALJ properly considered Z.D.F.'s
limitations because the ALJ discussed none of the evidence in reaching his
conclusion for the first two domains.  "Such a bare conclusion is beyond meaningful
judicial review."  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

The government urges us to overlook the error, asserting that the ALJ's
decision is supported by substantial evidence.  Whether or not that is true, however,
tells us nothing about whether the ALJ applied the proper legal analysis in
concluding that Z.D.F. did not meet a listing.  And if the ALJ did not employ the
proper legal analysis, we cannot determine whether the decision is supported by
substantial evidence.  *See id.* ("In the absence of ALJ findings supported by specific
weighing of the evidence, we cannot assess whether relevant evidence adequately
supports the ALJ's conclusion that appellant's impairments did not meet or equal any
Listed Impairment, and whether he applied the correct legal standards to arrive at that
conclusion.").  Accordingly, on remand the ALJ must evaluate the evidence of
Z.D.F.'s limitations and make specific findings why those limitations do or do not
satisfy the requisite levels of severity in each domain for purposes of satisfying the
functional equivalence of a listing.

III

The judgment of the district court is reversed, and this case is remanded to the district court with instructions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge