FILED
United States Court of Appeals
Tenth Circuit

April 9, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

CORY G. GALLOWAY,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 23-4054
(D.C. No. 2:21-CV-00569-JNP)
(D. Utah)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.

_____

Cory G. Galloway appeals from an order of the district court affirming the Commissioner's decision denying his application for Social Security disability benefits. We reverse and remand for further proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

Mr. Galloway filed his protective application for Social Security disability benefits in January 2019.  He alleged he became disabled on November 8, 2017, due to osteomyelitis of the spine with complications including streptococcal infection of the spine, sepsis, kidney failure, deep vein thrombosis, pulmonary embolism, and spinal stenosis.  The agency denied his application initially and upon reconsideration.  He requested a de novo hearing before an administrative law judge (ALJ).

The ALJ held a telephone hearing in November 2020, at which Mr. Galloway and a vocational expert (VE) testified.  The ALJ later issued a written decision in which he concluded that Mr. Galloway had not been disabled as defined in the Social Security Act from his alleged onset date through the date of the decision.

In evaluating Mr. Galloway's claim, the ALJ applied the Commissioner's five-step sequential evaluation process.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing process).  Under this analysis, Mr. Galloway bore the burden of establishing a prima face case of disability at steps one through four.  *See Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013).  If he successfully met this burden, the burden of proof shifted to the Commissioner at step five to show that Mr. Galloway retained a sufficient residual functional capacity (RFC) to perform work in the national economy, given his age, education, and work experience.  *See id.*

At step one, the ALJ found Mr. Galloway had not engaged in substantial gainful activity since his alleged onset date.  At step two, the ALJ found that Mr. Galloway had the following severe impairments that significantly limited his ability

2

to perform basic work activities:  osteomyelitis, morbid obesity, and spinal stenosis.  The ALJ found other impairments but concluded that they were not severe, including kidney failure, deep vein thrombosis, and pulmonary embolism.  At step three, the ALJ determined Mr. Galloway did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

The ALJ then assessed Mr. Galloway's RFC, based on consideration of the entire record.  He found that Mr. Galloway

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  He can lift and carry twenty pounds occasionally and ten pounds frequently.  He can sit, stand, and/or walk for six hours in an eight-hour workday.  He can never climb ladders, ropes, or scaffolds, crouch, or crawl.  He can occasionally climb ramps or stairs, stoop, kneel, or balance.

Aplt. App., vol. II at 21.

In making this assessment, the ALJ evaluated the medical record, including the medical opinions and prior administrative medical findings in the file.  The ALJ was partly persuaded by the consultative opinion of Brian Paulson, PA-C, that Mr. Galloway had essentially no limitations.  As the ALJ saw it, Mr. Paulson's opinion was "not supported with explanation or rationale" but was "well supported by [Mr. Galloway's] performance at the consultative examination," and "consistent with the objective signs in the treatment notes."  *Id.* at 24.  But the opinion was "not entirely consistent with the imaging in the record that showed abnormalities throughout the spine," and was "inconsistent with the prior administrative medical findings."  *Id.*

The ALJ also considered the opinions of Abe Tomco, M.D., who had treated Mr. Galloway. Dr. Tomco stated that Mr. Galloway could sit, stand, and/or walk for less than two hours in a workday and could lift and carry less than ten pounds but only rarely and with unscheduled breaks. He could rarely twist or climb stairs and never stoop, crouch, or climb ladders, and had significant limitations in reaching, handling, or using his fingers. The ALJ found Dr. Tomco's opinion unpersuasive because the ALJ found that it was unsupported by explanation or rationale or objective evidence in his treatment notes and was inconsistent with both Mr. Galloway's performance at the consultative examination with Mr. Paulson and with the prior administrative medical findings.

Finally, the ALJ considered the prior administrative medical findings. He found them persuasive. These findings concluded that Mr. Galloway would be limited to a range of light work with postural limitations. The ALJ determined these findings were supported by Mr. Galloway's performance at the consultative examination and the objective findings in his treatment notes and were consistent with the medical evidence in the record.

In his analysis of the medical evidence, however, the ALJ did not mention or discuss the results of a functional capacity evaluation (FCE) of Mr. Galloway administered by Lynn G. Adams, a physical therapist, on March 10, 2020.

Continuing to step four, the ALJ concluded Mr. Galloway was unable to perform his past relevant work as a head janitor, which is medium, skilled work but which he had performed as heavy work. At step five, the ALJ determined that if

4

Mr. Galloway were capable of a full range of light work, Medical-Vocational Rule 202.21 would dictate a finding of "not disabled." But given the limitations on his ability to do light work incorporated in the RFC assessment, the ALJ applied the Rule as a framework and conducted his inquiry in light of the VE's testimony. The ALJ concluded that given his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Mr. Galloway could perform. He identified three such light, unskilled jobs: small-parts assembler, parking lot attendant, and photocopy-machine operator. He therefore concluded Mr. Galloway was not disabled.

The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. Mr. Galloway sought review in the district court, which upheld the final decision.

## DISCUSSION

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Mr. Galloway raises a single claim of error on appeal. He contends the ALJ erred in failing to discuss the FCE completed by Mr. Adams on March 10, 2020. He argues the FCE (and Dr. Tomco's statements based on it) were inconsistent with the

ALJ's RFC assessment and the FCE was significantly probative evidence that the ALJ was required to discuss.

Although the ALJ need not discuss every piece of evidence, "in addition to discussing the evidence supporting his decision, the ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *see also, e.g.*, *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (recognizing that an ALJ must "discuss the significantly probative evidence supporting claimant's allegations on which he chose not to rely"). The parties disagree about whether the FCE was significantly probative evidence within the meaning of *Clifton*.

"Significantly probative evidence" includes, for example, valid results from generally accepted tests that would support a finding of disability, *see Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1238-39 (10th Cir. 2001); a statement from a medical provider that relates to the severity of a claimant's impairments or their impact on her ability to function, *see Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008); a statement from a consulting mental-health professional concerning a claimant's mental impairments and restrictions, *see Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); or an RFC assessment explaining the claimant's "limited range of motion, inability to lift his arms above shoulder height, and pain associated with repeated movements," *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004).

By contrast, evidence is not "significantly probative" where the claimant fails to explain how that evidence undercuts the ALJ's conclusions about her ability to perform work-related activities. *See Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014). And where the record evidence does not conflict with the ALJ's conclusions, so that "the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Thus, in cases where the ALJ's reasoning is adequate for judicial review, we have "rejected a construction of *Clifton* that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings." *Wall*, 561 F.3d at 1069 (internal quotation marks omitted).

During the FCE, Mr. Adams conducted a series of mobility tests to ascertain Mr. Galloway's range of motion in his lumbar and cervical spine and lower extremities. These tests revealed that Mr. Galloway "demonstrated limited mobility through the hamstrings and into the lumbar spine" and showed increased pain in the left thoracic area with rotation. Aplt. App., vol. VII at 1335. Results from a questionnaire showed a 25 percent limitation in his upper extremities and a 50 percent limitation in his lower extremities. A number of other tests showed limited mobility and decreased endurance.

Mr. Adams also had Mr. Galloway take a 6-minute walk test. He was "able to ambulate 800 feet" but "his ambulation was slow and labored." *Id.* He had a side-to-side "gait pattern." *Id.* Mr. Adams noted that Mr. Galloway's ability to walk,

at age 39, was below the expectation for an 80 to 89-year-old male, who should be able to walk 1,696 feet in six minutes. Mr. Galloway was also "very fatigued" as a result of the test, "developed shortness of breath," and needed to rest afterwards for approximately five minutes. *Id.* at 1336. This result contrasted significantly with the ALJ's RFC assessment, which stated Mr. Galloway could sit, stand, and/or walk for six hours in an eight-hour workday.

Finally, Mr. Adams tested Mr. Galloway's ability to repeatedly lift a 10-pound weight. These tests resulted in pain, fatigue, weakness, and shortness of breath. He concluded Mr. Galloway "would be unable to perform his normal work duties [as a custodian] due to general weakness, deconditioning and reported pain," "would benefit from an extensive rehabilitation program," and would benefit from a dietary program and dietary training. *Id.* at 1337. Notably, the ALJ's RFC assessment had concluded Mr. Galloway could lift and carry twenty pounds occasionally and ten pounds frequently.

We conclude Mr. Adams's FCE qualifies as significantly probative evidence that the ALJ failed to discuss. The examination and its conclusions relate to the severity of Mr. Galloway's impairments and their impact on his ability to perform work-related activities, specifically walking, lifting, carrying, and using his upper extremities. It is based on objective testing that yielded results inconsistent with the ALJ's RFC assessment. In addition, the FCE's conclusions may be relevant to the consistency and supportability of Dr. Tomco's opinions concerning Mr. Galloway's limitations.

8

The Commissioner's arguments to the contrary are not persuasive. The Commissioner focuses on Mr. Galloway's improvement after his hospital discharge in February 2018, when he was treated with intravenous antibiotics for a spinal infection. In particular, the Commissioner cites post-hospitalization examinations beginning in late 2018 that showed Mr. Galloway had good strength and a normal gait, *see* Aplee. Br. at 20-21, and normal sensation and range of motion, *see id.* at 21-22. The Commissioner also cites portions of Mr. Galloway's hearing testimony that support his ability to exercise and to perform daily activities. But even so, we cannot say, based on a reading of the ALJ's decision as a whole, that a remand to discuss the FCE is unnecessary here. *See Wall*, 561 F.3d at 1069.

The more recent evidence remains equivocal concerning Mr. Galloway's ability to perform sustained activity during a full workday. In 2020 medical visits, for example, he complained of inability to sit and/or walk for long periods, numbness and pain in his legs, and neuropathic hand pain. *See* Aplt. App., vol. VII at 1449, 1453. In a medical visit in 2020, he reported an inability to walk without pain, a need to use a cane when walking farther than a block, and an inability to sit upright. *Id.* at 1513. MRI results showed evidence of mild spinal stenosis. *Id.* at 1485-86.[1]

---

[1] In citing this evidence, we do not substitute our judgment for the ALJ's or to reweigh the evidence. Nor do we suggest what result the ALJ should reach on remand after considering the FCE. Rather, this evidence supports our conclusion that the FCE is significantly probative evidence that the ALJ should have discussed.

These indications are supported by, and support, the FCE's findings, making the FCE far from the outlier the Commissioner suggests it is.

The Commissioner also downplays the degree to which the FCE actually conflicts with the ALJ's findings. The Commissioner notes that a portion of the examination was an attempt to mimic Mr. Galloway's activities as a custodian at the college where he worked and points out that the FCE ultimately concluded Mr. Galloway would be unable to return to his normal work duties. The Commissioner reminds us that the ALJ also found Mr. Galloway could not return to his past relevant work as a custodian. Thus, the Commissioner implies, the FCE does not really challenge the ALJ's conclusions about Mr. Galloway's ability to return to his past relevant work, and the ALJ therefore did not need to discuss it as "rejected" evidence. But this argument fails to adequately consider the FCE's more general conclusions about Mr. Galloway's ability to walk, lift, carry, and use his upper extremities, which are relevant to his RFC, generally, and to his ability to perform other work at step five of the analysis.

Finally, the Commissioner notes the ALJ stated "he had carefully considered all the evidence and the entire record when making his findings." Aplee. Br. at 29 (internal quotation marks omitted). Although the ALJ may have considered all the evidence, *Wall*, 561 F.3d at 1070, this would not exempt him from discussing significantly probative evidence he has rejected.

## CONCLUSION

For the foregoing reasons, we reverse and remand to the district court with instructions to remand to the agency for further proceedings consistent with this decision.

        Entered for the Court

        Gregory A. Phillips
        Circuit Judge