**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

T.S., on behalf of a minor child, R.U.S.,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 23-1187
(D.C. No. 1:21-CV-01102-CNS)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MORITZ**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.
_____

T.S., on behalf of her minor son, R.U.S., appeals from the district court's

affirmance of the Social Security Commissioner's denial of supplemental security

income benefits based on childhood disability.[1]  Exercising jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We continue the district court's practice of using initials to refer to the plaintiff-appellant.

## I.  BACKGROUND

T.S. filed an application for R.U.S. in August 2016, alleging R.U.S., who was a preschooler at the time, had been disabled since birth.

A child is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations. . . ." 42 U.S.C. § 1382c(a)(3)(C)(i).  The three-step process for assessing whether a child is disabled requires an administrative law judge (ALJ) to determine "(1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).  At step three, "the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals the listings."  *Id.* (internal quotation marks omitted).

The agency denied R.U.S.'s application initially, but then T.S. requested and received a hearing before an ALJ in July 2018.  Applying the agency's three-step process for determining whether a child is disabled, *see id.*; 20 C.F.R. § 416.924(a), the ALJ issued a written decision denying benefits in November 2018.  Following a remand by the district court and a remand by the Appeals Council, the ALJ held a second hearing in November 2020.  In January 2021, the ALJ issued the decision underlying this appeal, again using the three-step process.

On remand, the ALJ first found that R.U.S., who was by then a school-age child, had not engaged in substantial gainful activity.  At step two, the ALJ determined that R.U.S. had eight severe impairments:  attention deficit hyperactivity disorder (ADHD), autism, disruptive behavior disorder, Ehlers-Danlos syndrome, generalized anxiety disorder, headache disorder, mild obstructive sleep apnea, and seizure disorder versus non-epileptic staring spells.  The ALJ also considered R.U.S.'s non-severe impairments, including asthma, flatfeet, gastrointestinal issues, nosebleeds, and tonsillar hypertrophy.

But at step three, the ALJ found that R.U.S.'s impairments did not meet or medically equal a listed impairment.  She therefore considered R.U.S.'s impairments within the six domains of functioning and found that they also did not functionally equal a listed impairment.  *See* 20 C.F.R. § 416.926a.  Thus, the ALJ determined that R.U.S. was not disabled and denied benefits.

T.S. did not file exceptions to the ALJ's decision and the Appeals Council did not assume jurisdiction of the case, so the ALJ's January 2021 decision became the agency's final decision.  *See* 20 C.F.R. § 404.984(d).  T.S. sought judicial review, and the district court affirmed.[2]

---

[2] It bears mentioning that, initially, the district court mistakenly declined to consider a portion of T.S.'s opening brief because the court misread its own scheduling order.  *Compare* Aplt. App. vol. I at 11 (April 2021 scheduling order limiting the "legal argument portion" of opening and response briefs to twenty pages), *and id.* at 13–42 (T.S.'s opening brief, which contains an eighteen-page legal argument), *with id.* at 78 n.3 (March 2023 order "declin[ing] to consider the arguments contained in the Opening Brief past the twentieth page.").  While the applicable local rule, *see* D.C.COLO.LAPR 16.1(c)(2), is silent about what happens

## II. DISCUSSION

On appeal, T.S. argues the ALJ erred in evaluating the medical opinion of R.U.S.'s treating physician, Michael A. Ramos, M.D.

### A. Standard of Review

We review the district court's ruling de novo. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Therefore, "[w]e review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted). Although we will assess whether the ALJ followed the legal rules governing how to weigh particular types of evidence in disability cases, we will neither reweigh the evidence nor substitute our judgment for the Commissioner's. *See id.*

### B. Functional Equivalence

When a child claimant "ha[s] a severe impairment or combination of impairments that does not meet or medically equal any listing, [the ALJ] will decide

---

if a litigant exceeds the page limitations in a Social Security appeal, even if the brief had exceeded the page limit, we are troubled that the court would accept the filing and then ignore the pages exceeding the limitation without notifying the litigant or otherwise affording her an opportunity to correct the issue.

whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). The ALJ considers how the child's impairment(s) affect his functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and, (6) health and physical well-being. § 416.926a(b)(1).

To functionally equal the listings, the impairment(s) must result in "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." § 416.926a(a). A "marked" limitation means the child's "impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2)(i). And an "extreme" limitation means the child's "impairment(s) interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(3)(i). In determining whether a child's limitations are "marked" or "extreme," the ALJ compares the child's functioning to the typical functioning of same-age children without impairments. § 416.926a(f)(1).

## C. Evaluating Medical Opinions

An ALJ evaluates opinion evidence under the rules set forth in 20 C.F.R. § 416.927.[3] Under these rules, the ALJ must explain the weight given to medical opinions. The ALJ will give controlling weight to medical opinions from the

---

[3] New agency rules for evaluating medical opinions, effective as of March 27, 2017, do not apply to R.U.S.'s disability claim, which was filed in 2016.

claimant's treating provider if the ALJ finds that the treating provider's "medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." § 416.927(c)(2).

But when the ALJ does not give the treating provider's medical opinion controlling weight, several factors apply in determining the weight to give that opinion. *Id.* The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which relevant evidence supports the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the provider is a specialist and whether the opinion relates to the provider's specialty; and (6) other factors supporting or contradicting the opinion. *See* § 416.927(c)(2)(i)–(ii), (c)(3)–(6).

Nevertheless, the ALJ need not "explicitly discuss" or "apply expressly" each of the relevant factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ's decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). "The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection" and we "exercise common sense." *Keyes-Zachary*, 695 F.3d at 1166.

**D.  Analysis**

**1.  Dr. Ramos's Opinion**

According to the record, R.U.S.'s first appointment with Dr. Ramos as his treating provider was in May 2014, and Dr. Ramos saw R.U.S. at approximately fifteen more appointments before he completed a child functional assessment in October 2017.  In it, Dr. Ramos opined that R.U.S. has extreme limitations in caring for himself, because he "[n]eeds constant supervision for safety," and "relies on [his] mother heavily for [activities of daily living]."  Aplt. App. vol. IV at 198.  He opined that R.U.S. has less than marked limitations in interacting and relating with others, explaining that he "needs prompting."  *Id.* at 197.  Dr. Ramos further opined that R.U.S. has marked limitations in the other four functional domains (acquiring and using information, attending and completing tasks, moving about and manipulating objects, and health and physical well-being).

To support his opinion that R.U.S. has marked limitations in acquiring and using information, Dr. Ramos explained that he "[o]ften needs redirection and breaks in [one] task," and "needs constant repetition."  *Id.*  He explained his opinion that R.U.S. has marked limitations in attending and completing tasks by stating that he is "[e]asily distracted," and "needs continued redirection."  *Id.*  Regarding his opinion that R.U.S. has marked limitations in moving about and manipulating objects, Dr. Ramos explained that he has "[d]ecreased gross motor strength & planning" and "less than adequate coordination."  *Id.*  Finally, Dr. Ramos explained that R.U.S. has marked limitations in health and physical well-being because he "[n]eeds assistance

7

and prompting w[ith] his overall well being and performance of motor skills." *Id.* at 198.

### 2. The ALJ's Evaluation of Dr. Ramos's Opinion

The ALJ noted that Dr. Ramos was R.U.S.'s "treating provider" but she gave his opinion "little weight," because it was "not consistent with the evidence." Aplt. App. vol. VI at 107. The ALJ found that Dr. Ramos's opinion—that R.U.S. had extreme limitations in caring for himself and marked limitations in four of the other domains—was "not supported by [R.U.S.]'s treatment records, which fail to support such extensive limitations in functioning." *Id.* She also determined that "[t]he exams during routine visits with Dr. Ramos generally showed normal findings on physical and mental status" and R.U.S.'s "exams overall by multiple providers failed to show significant abnormalities" and instead showed "normal strength, intact sensation, and normal gait." *Id.*

### 3. T.S.'s Arguments

T.S. advances two arguments on appeal, both of which relate to the ALJ's evaluation of Dr. Ramos's medical opinion. Neither argument is persuasive.

First, while T.S. does not argue Dr. Ramos's opinion deserves controlling weight, she argues that the ALJ failed to consider the requisite weighing factors for a treating provider's medical opinion when she determined the weight of Dr. Ramos's opinion. Specifically, T.S. asserts that "[i]t was error for the ALJ to assign little weight to Dr. Ramos's opinions after only considering the normal exam findings." Aplt. Opening Br. at 19. We disagree.

Contrary to T.S.'s assertion, the ALJ's stated reasons for discounting Dr. Ramos's opinion bore on the weighing factors. She gave Dr. Ramos's opinion little weight because she found his opinion was not supported by his own treatment records, which generally showed normal findings on R.U.S.'s physical and mental status exams at routine visits. *See Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (upholding ALJ's rejection of treating physician's opinion that claimant was disabled where his conclusions were not supported by the results of his examination); 20 C.F.R. § 416.927(c)(3) (listing supportability as a weighing factor). The ALJ also explained that she gave Dr. Ramos's opinion little weight because it was inconsistent with R.U.S.'s exams by multiple other providers, which also "failed to show significant abnormalities" and included normal findings overall. Aplt. App. vol. VI at 107; *see* § 416.927(c)(4) (listing consistency as a weighing factor).

The ALJ's rationale for giving Dr. Ramos's opinion little weight is not extensive but it is "sufficiently specific to make clear . . . the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (internal quotation marks omitted). The ALJ was not required to "apply expressly" or "explicitly discuss" each of the factors under 20 C.F.R. § 416.927(c). *Id.* And we conclude her evaluation was sufficient because it was supported by substantial evidence. *See Allman v. Colvin*, 813 F.3d 1326, 1332 (10th Cir. 2016) (concluding substantial evidence supported the ALJ's decision to

give treating physician's opinion "little weight" because it was unsupported by the physician's treating notes and inconsistent with other substantial record evidence).

Second, T.S. says the ALJ improperly gave more weight to the opinions of non-examining medical consultants—Dr. Berkowitz, Dr. Lipetz, and Dr. Weaver—than she gave to Dr. Ramos's opinion as the treating provider. We have already upheld the ALJ's decision to give Dr. Ramos's opinion little weight. And while a treating provider's medical opinion is *eligible* for greater weight, it is not automatically afforded more weight than other medical opinions. The ALJ had to consider Dr. Ramos's opinion in the context of other medical opinions and relevant evidence in the record, *see* § 416.927(b), and she had to "evaluate every medical opinion," "[r]egardless of its source," § 416.927(c).

Here, the ALJ said that she had considered all the medical opinion evidence in accordance with the rules set forth in 20 C.F.R. § 416.927 and we take her at her word. *See Wall*, 561 F.3d at 1070 ("Where, as here, the ALJ indicates [s]he has considered all the evidence our practice is to take the ALJ at [her] word." (brackets and internal quotation marks omitted)). Moreover, T.S.'s argument does not show that the ALJ made findings without substantial evidence or applied an incorrect standard; instead, it invites us to reweigh the evidence and substitute our judgment for the ALJ's. We must decline. *See Lax*, 489 F.3d at 1084.

In sum, the ALJ properly evaluated Dr. Ramos's medical opinion and substantial evidence supports her findings.

## III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Nancy L. Moritz
Circuit Judge